**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| v. | : Crim. Action No.: 19-32 (FLW) |
| ROBERT ALEXANDER, | : **OPINION** |
| Defendant. | : |

**WOLFSON, Chief Judge**:

Defendant Robert Alexander ("Defendant"), a prisoner serving a 46-month sentence at FCI Danbury, but currently housed at the Monmouth County Correctional Institute ("MCCI")[1], has renewed his prior motion for compassionate release pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A). The Court previously denied Defendant's motion because he failed to exhaust his administrative remedies.[2] In the instant motion, Defendant again seeks release

---

[1] Defendant was transferred to MCCI, a state facility, in January 2020 in order to participate in pre-trial proceedings on an obstruction charge pending before the Honorable Brian R. Martinotti, U.S.D.J.

[2] Under the First Step Act, a court may only consider a motion for compassionate release "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Raia*, 954 F.3d 594, 596-97 (3d Cir. 2020). Defendant filed a request for compassionate release with the Warden at FCI Danbury on April 6, 2020. The thirty-day period has now lapsed, satisfying the exhaustion requirement.

from MCCI to home confinement based on underlying health issues, which he argues, place him at heightened risk for complications if he contracts COVID-19. The Government opposes Defendant's motion, contending that Defendant has not demonstrated extraordinary circumstances warranting his release and that MCCI, where he is currently housed, has taken significant steps to limit the spread of COVID-19. For the reasons stated below, Defendant's motion is **DENIED**.

## I.   BACKGROUND

Defendant's criminal conviction and sentence arise out of incidents where Defendant supplied false social security numbers, belonging to other individuals, on financial applications for vehicles. On January 14, 2019, Defendant pleaded guilty to one count of making a false statement on a loan application. *See* ECF No. 24, Plea Agreement. Subsequently, this Court sentenced Defendant to a term of 46-month imprisonment, to be followed by five years of supervised release. *See* ECF No. 30, Judgment. At present, Defendant has served approximately seven months of his 46-month sentence, and his projected release date is October 27, 2022.

Defendant is also awaiting trial, before the Hon. Brian R. Martinotti, U.S.D.J., on an obstruction of justice charge stemming from Defendant's attempts to delay his self-surrender, prior to

2

commencing the sentence which he is now serving.[3]  Prior to the date of Defendant's anticipated surrender, he provided this Court with an allegedly forged and falsified medical note in support of his application to postpone the date of his voluntary surrender. *See U.S. v. Alexander*, 19-863, ECF No. 1, Indictment.

On April 6, 2020, Defendant submitted a request for compassionate release to the Warden at FCI Danbury, where he was initially designated by the Bureau of Prisons ("BOP"). On April 27, 2020, Defendant filed a letter requesting compassionate release, which was opposed by the Government based upon, *inter alia*, Defendant's failure to exhaust his administrative remedies. *See generally* ECF No. 35, Government's Opposition Br.  On April 30, 2020, this Court denied Defendant's motion without prejudice, finding that the exhaustion requirements are mandatory and the Court could not "waive the procedural prerequisites imposed by Congress."  ECF No. 63, Order Denying Motion for Compassionate Release.

On May 7, 2020, Defendant filed the instant motion renewing his request for compassionate release under the First Step Act, 18

---

[3]    Defendant filed an application for pre-trial release in that matter, which was stayed pending this Court's decision on Defendant's application for compassionate release. *See U.S. v. Alexander*, 19-863, ECF No. 18, Motion for Pre-trial Release; ECF No. 20, Text Order Granting Stay; ECF No. 23, Letter Order Continuing Stay.

U.S.C. § 3582(c)(1)(A). *See* ECF No. 37, Def. Renewed Br. The Government, relying on its prior briefing, has renewed its opposition, on the merits, to Defendant's motion. *See* ECF No. 38, Gov. Renewed Opp.

Defendant is a 44-year old African-American male, who suffers from hypertension, obesity, and a benign brain tumor. Defendant argues that his medical conditions are recognized risk factors, which render him particularly vulnerable to COVID-19, and the BOP has already acknowledged his myriad of health issues by placing him in the medical wing at MCCI. Def. Renewed Br. at 8. Moreover, Defendant highlights data from the CDC which shows that COVID-19 has disproportionally affected African Americans. *Id.* at 4. That is, African American individuals represent approximately 33% of individuals hospitalized with the virus and account for 34% of COVID-19 related deaths, despite only making up approximately 13% of the U.S. population. *Id.* at 4. Accordingly, Defendant argues that his medical conditions, age, and race place him at particularly high risk of contracting COVID-19, and incurring serious complications.

Further, Defendant maintains that, despite steps which have been taken to mitigate the spread of COVID-19 at MCCI, he is still at heightened risk of contracting COVID-19 in a prison environment. In that regard, Defendant explains that he lives in dormitory style housing with 15-30 other inmates, who all reside in bunk beds and

4

share a bathroom. *Id*. at 3. Based on these circumstances, Defendant requests that I permit him to serve the remainder of his sentence on home confinement in the custody of his uncle in Newark, New Jersey.

The Government opposes Defendant's motion and argues that there are no extraordinary or compelling reasons to release Defendant to home confinement at this time.

## II. <u>DISCUSSION</u>

Once a federally imposed sentence commences, a district court has limited authority to modify that sentence. *Dillon v. United States*, 560 U.S. 817, 825 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." (quoting 18 U.S.C. §3582(b))). One such authority for modifying a sentence is found in the recently-enacted First Step Act, which allows a defendant to be afforded compassionate release for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i). The statute provides, in relevant part:

> (c) Modification of an imposed term of imprisonment. The court may not modify a term of imprisonment once it has been imposed except that—
>
>> (1) in any case—
>>
>>> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the

5

>
> defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the facts set forth in section 3553(a) to the extent that they are applicable, if it finds that –
>
> (i) extraordinary and compelling reasons warrant such a reduction.

18 U.S.C. § 3582(c)(1)(A)(i). In other words, a defendant seeking a reduction in his sentence under the First Step Act "bears the burden of satisfying both that he has (1) exhausted remedies before seeking judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release." *United States v. Sellers*, Crim. No. 10-434, 2020 WL 19728862, at *1 (D.N.J. Apr. 24, 2020) (citing 18 U.S.C. § 3582(c)(1)(A)).

Congress did not define the term "compelling and extraordinary reasons," but instead directed the Sentencing Commission to define the term. *See* 28 U.S.C. § 994(t) (providing that the Sentencing Commission "shall describe what should be

considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"). While the Sentencing Commission previously defined that term as it relates to the BOP's discretion under the previous version of section 3582(c)(1)(A), it has not, however, updated its Policy Statement since the passage of the First Step Act. *See United States v. Rodriquez*, ___ F. Supp. 3d ___, 2020 WL 1627331, at *3 (E.D. Pa. Apr. 1, 2020); *see also* U.S. Sentencing Guidelines Manual ("U.S.S.G."), § 1B1.3, Application Note 1 (U.S. Sentencing Comm'n 2018). Nevertheless, the Policy Statement provides useful guidance for district courts in assessing a defendant's eligibility for compassionate release, but it "does not constrain [a court's] independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3852(c)(1)(A)." *Rodriquez*, 2020 WL 1627331, at *4 (alteration in original) (quoting *United States v. Beck*, 425 F. Supp. 3d 573, 581-82 (M.D.N.C. 2019)). The Policy Statement provides that a defendant may show extraordinary and compelling reasons for compassionate release based on the medical condition of the defendant, the age of the defendant, the defendant's family circumstances, or for "other reasons." U.S.S.G. § 1B1.13, Application Note 1.[4] Relevant to Defendant's motion, a defendant

---

[4] It is unresolved whether a Court, can, in its discretion, determine whether a defendant has shown extraordinary and

may show extraordinary and compelling reasons for release based on a medical condition where (1) "[t]he defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)," or (2) he or she is "(I) suffering from a serious physical or medical condition, (II) suffering from a serious function or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* Moreover, as the First Step Act instructs, the Court must consider "the factors set forth in section 3553(a) to the extent that they are applicable." § 3582(c)(1)(A).

Defendant has not shown that there are extraordinary and compelling reasons justifying his release. As an initial matter, it is not clear that being African-American increases Defendant's risk of complications from the COVID-19, in the same manner as one's underlying medical conditions. Indeed, although African Americans are overrepresented in data regarding COVID-19 hospitalizations and deaths in America as a whole, this

---

compelling reasons for release under the catchall provision of the Policy Statement. *See Rodriquez*, 2020 WL 1627331, at *3-4. Because Defendant seeks compassionate release based on a medical condition, this Court need not determine whether it has discretion to find that other reasons exist to permit compassionate release.

8

overrepresentation may result from other systemic economic and social issues affecting the African American community, including access to health care, higher prevalence of underlying conditions, and lack of access to health insurance.  *See* Center for Disease Control and Prevention, Coronavirus Disease 2019 Racial & Ethnic Minority Groups, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/racial-ethnic-minorities.html (explaining that economic and social conditions often isolate racial and ethnic minorities form the recourses needed to prepare for and respond to COVID-19 outbreaks).  As such, it is unclear whether Defendant's race places him at a greater risk of contracting COVID-19, while he is incarcerated and receiving medical treatment at the MCCI.

Turning to Defendant's medical history, Defendant does not have a terminal illness nor does it appear that his medical conditions substantially diminish his ability to provide self-care within a correctional environment, even considering the potential risk of contracting COVID-19.  While individuals who suffer from obesity and high blood pressure, such as Defendant, are at a higher risk of suffering from complications after contracting COVID-19, Defendant's health conditions are not sufficiently severe to establish a compelling basis for his release.  In fact, Defendant has not made any representations as to the extent or seriousness of his medical conditions.  In that connection, the Government obtained Defendants medical records from the Bureau of Prison and

9

provided them to the Court.[5]  While these records confirm that Defendant does, in fact, suffer from the identified conditions, they also indicate that the BOP is adequately managing Defendant's medical care.  For example, Defendant's hypertension, which it appears was previously untreated before his admission to the MCCI, has been controlled by medication since January 2020.  A number of other courts have denied requests for compassionate release by inmates with similar conditions.  *See United States v. Hammond,* Crim. No. 18-184, 2020 WL 2126783, at *5 (W.D. Pa. May 5, 2020)(denying motion for compassionate release where defendant was a 56-year old man with hypertension and high blood pressure); *United States v. Fry*, Crim. No. 11-141, 2020 WL 1923218 (D. Minn. Apr. 21, 2020) (denying motion for compassionate release where defendant was a 66-year-old man suffering from obesity, heart disease, and high blood pressure).  Although Defendant also suffers from a brain tumor, it is non-cancerous and Defendant has not proffered any scientific literature suggesting that this condition increases his risk of either contracting COVID-19, or experiencing complications if he were to contract the virus.

While the Court is sympathetic to Defendant's concerns about the potential complications which may arise if he were to contract

---

[5]  Defendant's medical records were not publicly filed on the docket, and were separately provided to the Court and defense counsel.

COVID-19, however, the mere existence of "COVID-19 in society and the possibility that it may spread ... cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). At this juncture, Defendant's position about the heightened risk of contracting COVID-19 while incarcerated at the MCCI is purely speculative.

On this point, the MCCI has taken various preventative measures which appear to have been effective in limiting the spread of COVID-19 in the facility. The Government has proffered a Declaration from Captain Victor Iannello of the Monmouth County Sheriff's Office, Corrections Division, which outlines the precautions which have been taken at the MCCI. *See* Gov. Br., Ex. B, Iannello Decl. These precautions include: 1) taking the temperature of staff upon their arrival and barring staff with a temperature of 100 degrees or higher from the facility until medically cleared; 2) requiring staff to wear N95 masks, with the exception of while they are eating in their designated break area; 3) suspending all inmate visitation; 4) newly admitted inmates are quarantined away from the rest of the population for 14 days; 5) medical staff at MCCI evaluate all new inmates outdoors and if they are found to be displaying "any flu-like symptoms," they are denied acceptance and brought to a hospital by the arresting agency and 6) Any inmates displaying COVID-19 symptoms are quarantined in a negative pressure cell in the MCCI's infirmary. Any inmates with

11

elevated temperatures or mild flu-like symptoms are quarantined in a separate housing unit, until medically cleared.  Asymptomatic roommates of such inmates are also moved to separate housing unit and put under quarantine, as well, until medically cleared.  *Id*. ¶11.  The effectiveness of MCCI's containment efforts is evidenced by the facility's limited number of COVID-19 cases.  The Governments posits that as of May 8, 2020, MCCI reported that both of the only two inmates suffering from COVID-19 had recovered, while one inmate is being treated as a presumptive positive and two others are on medical quarantine.  Gov. Reply Br. at 2.

While the Court is sympathetic to Defendant's concerns, based on the totality of the circumstances, Defendant appears no more susceptible to contracting COVID-19 while incarcerated at MCCI, than anywhere else in the community.  Notably, Essex County, New Jersey, where Defendant's uncle resides, is among one of the New Jersey counties that has been hardest hit by the virus. New Jersey Department of Health, New Jersey COVID Cases by County, https://www.nj.gov/health/cd/topics/covid2019_dashboard.shtml (last visited May 13, 2020) (Essex county has more than 15,700 coronavirus cases).[6]  Thus, it does not appear that Defendant would be at a lower risk of contracting COVID-19 while released.  Accordingly, Defendant has failed to establish an "extraordinary

---

[6]   The Court takes judicial notice of the data from the New Jersey Department of Health.

and compelling reason for his release under §3582(c)," Defendant's motion warrants denial for that reason alone.

Furthermore, consideration of the factors set forth in Section 3553 (a) also weigh against granting Defendant's petition. The following section 3553(a) factors are applicable to my decision:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B)   to afford adequate deterrence to criminal conduct;
>>
>> (C)   to protect the public from further crimes of the defendant; and
>>
>> (D)   to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective matter.
>
> . . . [and]
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]

18 U.S.C. § 3553(a)(1), (a)(2), (a)(6).

While Defendant's underlying conviction was for a non-violent offense, which would generally weigh in favor of release,

13

Defendant's criminal history suggests that he would not, in fact, comply with the conditions of house arrest if he were to be granted compassionate release, or that he might reoffend. Defendant has a lengthy criminal history, which includes prior federal offenses. Remarkably, Defendant was on supervised release at the time he committed the offenses which gave rise to his current conviction and sentence. Even more damming, Defendant committed the alleged acts of deception that gave rise to his pending obstruction of justice charge on the eve of his surrender date prior to commencing his current sentence. I have grave concerns that Defendant will likely recidivate.

Moreover, although Defendant contends that "he is well-posed to take advantage of [the compassionate release] program because he has a release plan in place," Def. Renewed Mot. at 10, Defendant has not provided any specific details regarding his plan, other than that he intends to reside with his uncle in Newark, New Jersey. Defendant has not outlined how his intended release plan will limit his likelihood of recidivism, and protect the public from further crimes.

As I explained on the record at Defendants' sentencing, his lengthy criminal history rendered this one of the "rare" cases where the circumstances warranted a sentence at the top of the Guidelines range and the maximum period of supervised release. *See* Sentencing Transcript, dated September 4, 2019, at 34:20-23.

14

Those considerations hold true today, and as such, granting Defendant's motion for compassionate release would be wholly inappropriate under the Section 3553(a) factors.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion for Compassionate Release is **DENIED**.

May 15, 2020

/s/ Freda L. Wolfson
Freda L. Wolfson
U.S. Chief District Judge